IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 25-cr-00094-JLK

UNITED STATES OF AMERICA,

Plaintiff,

v.

1.    AIDEN FRITZ

Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Daniel R. McIntyre, Assistant United States Attorney for the District of Colorado, and the defendant, AIDEN FRITZ, personally and by counsel, Marci G. LeBranche, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.    AGREEMENT

#### A. Defendant's Agreement:

The defendant agrees to

(1)    waive indictment and plead guilty to Count One of an information charging a violation of 18 U.S.C. § 371.

(2)    waive certain appellate and collateral attack rights, as explained in detail below;

COURT EXHIBIT
1

(3)    not to contest forfeiture as more fully described below, and

## B. Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). In exchange for his guilty plea, the government agrees to dismiss the indictment as to this defendant only.

### Acceptance of Responsibility

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive an additional one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

If the defendant engages in conduct which implicates USSG § § 3C1.1 cmt. N.4 between the guilty plea and sentencing in this case, in addition to any other consequences, the government will be released from its obligations under the plea agreement, and the defendant will not thereby have any right to withdraw from the plea agreement.

## C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)    the sentence exceeds the maximum sentence provided in the statutes of conviction;

(2)    the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 30; or

(3)    the government appeals the sentence imposed.

If the first criterion applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)    the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)    the defendant was deprived of the effective assistance of counsel; or

(3)    the defendant was prejudiced by prosecutorial misconduct.

The United States agrees not to argue a procedural bar to a prosecutorial misconduct claim raised in a § 2255 petition based on the failure of the defendant to raise that issue on direct appeal.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except

where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**Forfeiture of assets:**

The defendant admits the forfeiture allegation. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture pursuant to Title 18, United States Code, section 924(d) whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to:

(1) The Winchester, Model SXP, 12-guage shotgun with serial number TR188150YZSP,

(2) The Lewis Machine & Tool (LMT), model Defender 2000, multi-caliber rifle with serial number LMT94068,

(3) The Glock, model 17 Gen 5, 9mm pistol with serial number BXFP634,

(4) All privately made firearms (PMFs),

(5) All machine gun conversion devices, (MCDs), and

(6) all recovered ammunition.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## II.    ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which the defendant is pleading

guilty are as follows:

### Count One 18 U.S.C. § 371

*First*, the defendant agreed with at least one other person to violate the law, the law being possession of a machine gun in violation of 18 U.S.C. § 922(o) and making an unregistered machine gun in violation of 26 U.S.C. § 5861(f).

*Second*, one of the conspirators engaged in at least one overt act furthering the conspiracy's objective,

*Third*, the defendant knew the essential objective of the conspiracy,

*Fourth*, the defendant knowingly and voluntarily participated in the conspiracy, and

*Fifth*, there was interdependence among members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

## III.    STATUTORY MAXIMUM SENTENCE

The maximum statutory sentence for a violation of 18 U.S.C. § 371 is not more than

5 years' imprisonment; not more than a $250,000 fine, or both; no more than 3 years'

supervised release; and a $100 special assessment fee.

If a term of probation or supervised release is imposed, any violation of the terms

and/or conditions of supervision may result in an additional term of imprisonment.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the

rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.    STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties *stipulate that the following facts are true and correct*:

From a time unknown, but no later than November 26, 2024 up to March 11, 2025 CHRISTIAN GRANAT maintained a three-dimensional (3-D) printer in GRANAT'S bedroom in his shared apartment with AIDEN FRITZ. GRANAT used the 3-D printer to manufacture machine gun conversion devices for handguns and rifles, as well as parts for making privately made firearms. FRITZ and GRANAT did not register the machine guns with the National Firearms Registration and Transfer Record, and did not obtain authorization to manufacture them as required by the National Firearms Act. After creating

machine gun conversion devices, FRITZ and GRANAT sold them in large quantities to customers.

In furtherance of the conspiracy and to effect its objects, Fritz and Granat did the following: Sometime prior to November 26, 2024, GRANAT obtained a 3-D printer and code for the printer designed to manufacture machine gun conversion devices and privately made firearms. On November 26, 2024, FRITZ possessed numerous machine gun conversion devices which had been manufactured by the printer which he offered to sell to a customer. On December 12, 2024, FRITZ conducted a video call with the customer, during which he discussed how he manufactured machine gun conversion devices. On December 12, 2024, FRITZ offered to sell machine gun conversion devices GRANAT had manufactured to a customer. On December 17, 2024, FRITZ offered to send the customer five machine gun conversion devices through the United States mail. Between December 20, 2024 and January 14, 2025, FRITZ and GRANAT participated in numerous phone conversations with the customer where they discussed prices for the sale of machine gun conversion devices. On January 13, 2025, GRANAT accepted a $200 payment for machine gun conversion devices on his CashApp account. On January 14, 2025, GRANAT took five conversion devices which he disguised in a package of LEGO toys to the United States Post Office in Colorado Springs and mailed them to the customer in Louisville, Kentucky. On February 10, 2025, FRITZ and GRANAT negotiated the sale of an additional 15 machine gun conversion devices to the customer for $400. On February 10, 2025, GRANAT accepted a payment of $400 on his CashApp account made in exchange

for machine gun conversion devices.  On February 13, 2025, FRITZ and GRANAT participated in a phone call with the customer where GRANAT discussed the machine gun conversion devices he possessed, and explained that some of the machine gun conversion devices he manufactured and possessed did not fit into firearms as manufactured, but that he was able to hand file them to make them fit into a firearm properly.  On February 13, 2025, GRANAT offered the customer the option of purchasing 20 machine gun conversion devices he possessed.  On February 19, 2025 FRITZ and GRANAT sold the customer 37 machine gun conversion devices, including 23 they manufactured to fit in an AR-style rifle, and 14 manufactured to fit in a Glock handgun.  On February 19, 2025, FRITZ accepted $1000 for the 37 machine gun conversion devices and a frame for a privately manufactured firearm he and GRANAT had manufactured.  On February 20, 2025, FRITZ and GRANAT sold an additional 47 machine gun conversion devices to the customer.  On March 11, 2025, FRITZ possessed no less than 33 machine gun conversion devices which were recovered by law enforcement officers during the execution of a search warrant.  On March 11, 2025, GRANAT possessed hundreds of machine gun conversion devices he had manufactured which were recovered by law enforcement officers during the execution of a search warrant.

All of the MCDs recovered during the investigation described above are "machine guns" as that term is used in 18 U.S.C. §§ 921(a)(24) and 922(o) and 26 U.S.C. §5845(b).

Fritz and Granat agreed with each other to violate the law.  At least one of them engaged in at least one overt act furthering the conspiracy's objective.  Fritz knew the

essential objective of the conspiracy. Fritz knowingly and voluntarily participated in the conspiracy. There was interdependence among members of the conspiracy. Put another way, the members, including Fritz and Granat, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged in the information.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

### Count 1

      a)      Under Section 2K2.1(a)(5), the base offense level is **18**[1]

      b)      No specific offense characteristics apply.

---

[1] The parties believe the 2024 sentencing guideline manual applies.

    c)      The adjusted offense level is $18^2$.

    d)      No victim-related, role-in-offense, obstruction adjustments apply;

    e)      The parties anticipate the defendant will be entitled to a three-level reduction for acceptance of responsibility pursuant to § 3E1.1. The resulting total offense level is 15.

    f)      The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

    g)      The career offender/criminal livelihood/armed career criminal adjustments do not apply.

    h)      The advisory guideline range resulting from these calculations is 18-24 months. The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

    i)      Pursuant to guideline § 5E1.2, the fine range associated with an offense level 5 is $7,500 to $75,000.

    j)      Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is one to three years.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

---

[2] The government anticipates seeking an upward departure which may affect this estimate of the offense level and final guideline range.

Date: 12/1/25

_____
Aiden Fritz
Defendant

Date: 12/9/25

_____
Marci LeBranche
Attorney for Defendant

Date: 12/9/25

_____
Daniel R. McIntyre /Thomas Miner
Assistant U.S. Attorney